Your Honours, my name is Tom Fischer and I'm here on behalf of the imperial counselor at Simpao and Janice Cruz. Your Honours, before the court meets for a recent briefing, we have three issues at being noticed, the substance of the affairs, the class action, as well as the jury's views. If I may, I'd like to begin my discussion by talking about notices. Your Honour, notice in this case to this class of vulnerable individuals was essentially this one. If I understand the record, the notice was mailed to the claimants, it was published in two major newspapers, received extensive coverage on television, talk radio, and websites. Why wasn't that enough? Your Honour, it wasn't enough for several reasons. I could just begin with the court's last observation. The discussion in the media of the case is not necessarily a dissemination of the class, but I think more substantively on this point is, for example, 9,000 separate notices were returned to the Government of Guam as undeliverable and no further action was taken to be mailed or find a better address for these individuals. That was 9,000 out of a potential pool of 49,000. Additionally, Your Honour, there was no updating of any addresses in the case at all, and as a term of the settlement agreement, the parties actually agreed that as to class year 2004, well, as to tax returns, which had not yet been processed, although they were presumably sitting in a bag someplace on the floor of the Department of Revenue and Taxation, these given returns, which had not yet been processed, the government simply wasn't going to do that to include them into the class, because as they said, as I understand the argument, it would have caused a delay in the submission of class notice, and it was essentially too difficult. But the law and the Constitution in the matter is that if you can reasonably identify these people, an individual notice is required. It's not something that is dictated by the phrase, I think, from Eisenhower, it's the death of the plaintiff or defendant's pocketbook. If you can reasonably identify which one court is referred to as front-loading analysis, if they're identified, then they're entitled to individual notice. In terms of the cost of following up on these people, for instance, the IRS and all these files, the cost of finding 9,000 people in a bunch of files would be justifiable? Well, yes, it would, Your Honor. I think that that goes to the practicability analysis. And it is practical to do so. The United States certainly does it. They certainly do it through regulations. They require reference to the United States Post Office National Change of Address database, and it's something that is certainly available to the government of Guam, although I think in their briefing they argued that that particular regulation is not required. But, you know, this particular issue is not really a question of tax office. It's a question of constitutional due notice and the application of Rule 23. Is it practical to ask the post office to tell us whether or not these particular addresses have been updated? It certainly is. And, again, just to reiterate, the United States says that every single year. And the requirements of the Constitution are that if an individual can be identified, first of all, if the individual can be identified, they get reasonable notice, and notice must be the best practical. The argument that, well, it's expensive. Practical costs you a problem. It says the best practical. Is that supposed to be a problem for you? Those are not in the costs. There's no doubt about it. Individual notice would be the best, but there's a qualifier. That's practical notice. I think yesterday the court's inquiry would be whether or not it would be practical to take an additional step. For example, in the Jones v. Flowers case, that case was simply, it was standing merely for the proposition that you have to take an additional step when the government finds that their notice has gone awry, you've got to take an additional step. When we review, do we take a look at how many people did receive notice through the method that was used? Does that matter? It certainly is part of the background. Does it matter what percentage failed and what percentage were successful? Do we take that into consideration as we talk about practical? Yes, sir. And the reason that the court should have let it say that even if 90% of the people were notified through the methods used, and 10% clearly were not, because of a return, bad address, whatever reason, you would say it's not practical because everybody, I mean, absolutely. Our response would be that it would be practical to do the address updating, but our primary response today, Your Honor, is that this particular percentage, how successful it was, which is the government's argument, is simply saying that that's good enough. And this is a class of people who have been told too many times that this is good enough. We, on one, are as entitled to the protection of the Constitution as any American citizen. And if notices are not... I like your speech, but you want to get right to what we're going to have to decide, because we're going to decide this case on the record, aren't we? Yes, sir. You are. And what's the hope? The record of this trial, the record that you will find before you, is that, one, in the settlement, it was reasonable to identify a whole class, a whole subclass within this class of people, yet the government decided not to look into tax returns to find their address. On the record, this court will discover that 9,000 returns and notices came back undelivered, and the government took no additional steps. On the record, this court will discover that the United States wants a mirror system. The United States typically, and in many class actions typically, notice procedure requires address updating. That's the Parker case. That district court said that if you don't get a notice updating in that case, then it probably doesn't need to see it. So, on the record, I think this court would be compelled to discover, and rule, that the notice provision in this case was just too far below par. Is a finding of practicality an actual finding? Yes, sir. Your review on this issue of the adequacy of notice is going to be de novo. In Flowers, there was a gentleman who hadn't paid his taxes. The tax authority nearly moved because they had three tax-returned returns and received more than $50,000. And it was one person. Yes, sir. Here, what you're saying is the government should have looked at, as for 9,000 people, keeping in mind the amount of money they were paying in return, is there any indication in the record of what it would cost the government to find the 9,000 address? I don't think. There is no indication that I'm quite in the direction of how much it would have cost. But then the court's also saying that rule 23 isn't tailored to the size of, I guess, in Eisenhower's plaintiff's pocket. And that involved mailing something like 2,000 or 2,500,000 different lists or different notices. What I'm thinking of is trial court in positions to say, well, given the cost of sending out 9,000 new notices after doing so many hours of data research and searching for each of them is now, or if you did, it's moved away to someplace else. The next best thing is publication of the papers and the notes by media. Isn't that the termination? It's the one that we give judgements to. Well, in this situation, all of those notice techniques went out together. It was all mailed together. The publishing took place and then the 9,000 came back. And again, I'm not sure I'm answering your question. Well, the question is the district court judge takes a look at the 9,000 returns and says it's probably going to take so many employees so many hours to find each one of these persons and send out a second notice. As a practical matter, media notice and printing, newspaper ads, the announcement over the radio and television is a practical solution better than individual identification. Well, I think the court would take what it was the district court said on that and then make a de novo review. Why is that a practical, pardon me, why is that a factual finding that we think should be a difference? Well, I think we're coming back again to de novo review. You have in front of you. You like de novo review because constitutional rights all 9,000 get looked at. I get you. Get to your second point. Okay. Well, I think I would also follow up by saying that that doesn't appear to be the government bonds argument. Whether or not it's the termination issue, I don't hold that to record. I think the government bonds argument is that they simply didn't have to do that because it wasn't required by the tax law or it wasn't required by their adoption of regulation. So, if we assume it wasn't adopted by their particular regulation, I don't think that really answers some of the elements in this case because it's a constitutional question. And another aspect of this is that you want to get to your substantive fairness and you're curious to see something. Yes, you're moving on. Okay. I'm sorry, sir. Moving on to the substance of it. Substantively here, Capture 2000 was compromised. The classes were eventually broken in, or analytically, I suppose, they were separated into two groups. You had those who fell within the shadow of a potential time bar here because of 6511 and Judge Martinez made the observation 6532, and then you had cases which fell outside of the time bar. And what the settling parties did is they lumped 2000 into the potentially time bar cases. Now, we're not getting too deeply into the weeds here. In 2000, you had to make your return by 2001, and then you've got to treat your clock right. So, that stretches your possibility of filing an amended 1040, a 1040X, out to 2004, past the time of the filing of the first action by Mike Billings. And the American pipe, Scarletti, cemented everybody in. It stopped the clock for everybody. Yes, the parties said, well, no, 2000 has to be put in potentially time bar years because there's a 6532 clock running, and that is a two-year clock. Well, the 6532 actually ran when the argument kind of makes sense, but here in the Ninth Circuit, the law is that if you only start 6532, you should get registered notice of disallowance, and that never happened in this case. So, we can just kind of ignore it. There was no 6532 clock running. 2000 should not have been lumped in with the time bar years. They got compromised. And then the second part of the substantive unfairness that we brought up to the court is the fact that they said they leveraged interest. And when we talk about interest, we're not talking about pennies. This is not a coupon case, of course. This is EITC talking thousands of dollars for individual payments and hundreds, at least hundreds, in dollars in interest. Well, all of that was waived. The reason it was waived, the support observed, was because they were leveraging it, leveraging the interest in order to compensate potentially time bar requests. What do you mean leveraging? Well, they were saying, well, give up the interest if you won't push back. Essentially, they were saying, we'll give up the interest if you don't push back on potentially time bar years. She said they were leveraging the interest. Well, that means that the folks later in time who had no problem as a potential time bar, those folks had to give up all of their cash in order to make sure that the older folks got access. So, there's miscreantment of one thing. The rights weren't being compromised in order to get some money turned up. Precisely, sir, and that's just not acceptable. You're not allowed to do that. Can I get your attorney's speech? Yes, sir. Thank you very much. Maybe I need an attorney's speech. Your Honor, if you provide a benefit to the class, and we're trying to provide a benefit to the class, you ought to get paid, and we provided a benefit to the class in our summary judgment holding, in which we established the ability to settle this case. You could not certify this class without CINPAL. CINPAL established the exhaustion of the administrative revenues. Without CINPAL, the court wouldn't have had jurisdiction over this case. By CINPAL establishing that we had exhausted the administrative revenues, it made it possible to certify the class, and that was entirely uncompensated. We first defeated the motion to dismiss in this case. We were not compensated for this. What we are saying is that, and I don't think this is an argument from the case lawyers, if you provide a benefit to the class, then you ought to be compensated for it. We worked hard for this class. We established the ability. We provided the atmosphere, the potting soil for this entire settlement, and we didn't get compensated for it, and we would like to get compensated for it. We're asking this court, first of all, to do away with the settlement. It's substantially unfair, and the notice does not meet constitutional Rule 23. One last question, counsel, because the time is up. As far as scope of review on the attorneys' fees question, do you agree that that is abusive discretion? It is abusive discretion. That is our understanding. And I know that the case that Ms. Payne recently cited, I think it was Fitzgerald in the previous case that was submitted, 7.140, they discussed in one of the handouts there, attorneys' fees, that was a recent case. Thank you very much. Good morning, Your Honors. And may it please the Court, my name is Dawn Payne,  and with me this morning is Mr. Rick Burdeo, who represents Professor of Housing and Jewelry Santos. As this court is well aware, the district court is vested with broad discretion in settlement matters, particularly in a case like this one, where the negotiations are presided over by a respected and experienced settlement judge, and it is undisputed that the settlement here is the product of an arm's length, non-collusive negotiated resolution. Yet despite that fact, despite the district court judge's broad discretion, and despite the strong judicial policy that may result, that Judge Ferris did in Pacific Enterprise's security litigation, despite all that, objectors seek to unravel a $90 million settlement that has benefited tens of thousands of low-income workers on the lot. Ms. Payne, on the issue of notice, what is your response to Mr. Fisher's point that when the 9,000 letters came back undelivered, the government took no action whatsoever to edit, to find out further addresses and send them again? Why? The law of the circuit is clear. Notice need not be perfect. Stand back a little bit. The law of the circuit is clear. Notice need not be perfect. It need not be actual. And here it just needs to be... It's practical. Let's not talk about theories. Give me facts. How much would it cost the government to have found out, try to find out a second attempt, as it was in Flowers, a second attempt to find out what was going on? What would it cost? Is there any evidence on that? There's no evidence. I'm not aware of the cost of it. But I just want to note that in Jones, the Supreme Court found one of the arguments that the plaintiff made was, you know that notice came back to me, so you have a job to go through government records and find, or the phone book, and find my new address. And the court said no. That's not a reasonable, practical step. And so there's no authority from the Supreme Court. In Flowers' case, the holding was the Arkansas Tax Authority had not given constitutionally sufficient notice. Correct. And the reason is because they got a return mail that this man no longer lived, and he had to go to the state tax office, and instead of trying to find out where he lived, he went ahead and auctioned off the site for taxes. There is actually a section in there where it talks about what's required is additional practical steps. And the court was not going to say what the steps need to be, and the steps are going to vary according to the circumstances of each case. That's why I get back to the question, what was impractical? Why was it impractical to find out from the bank where these people now live? Well, as we have in our supplemental record, the Department of Revenue and Tax is understaffed. They have tons of responsibilities. They're overworked. And they weren't able to go through and find all that. And this is the Government of Guam. They aren't able to access, their computer system doesn't link in to the United States postal system. They can't just go and get the data. And it would have been impractical. And the judge found the notice here with those 9,000 people, she specifically found that it's not clear that even if the notice was recent, that it would have reached more people. What if 20,000 returns, and instead of 9,000, it was 20,000? Would that clearly be very difficult for the government? Or wouldn't that indicate that close to half the class had received notice? Would the government have no duty with respect to those people? Perhaps not. I'm not sure. And that's a completely different circumstance. And I'm not sure. I mean, it would have depended on how much it would have cost, the reasonableness, the practicality of it. And Judge Titango-Gatewood, the issue of notice, it is a de novo review, but her factual findings are entitled deference. You said there's something in the record about what it would have cost the government. It's just that would have been difficult. Let me ask you another question. Tim Powell's expert states, The settlement notice lacks a true headline, utilizes fine print, and wall-to-wall words, is difficult to read and navigate, and incorporates confusing legalistic terms and words. Looking at it, it appears that you're quite correct about that. You contend that it's not a proper characterization of the notice. Was the notice clear? And what makes you say that it's clear? The notice was sufficient. This is a tax case. It is complicated. There's going to be a lot more legalese in a notice dealing with tax matters than in one dealing with the product's liability. And I think that with notice, we have a room full of bright people. We can all work together and create what we think is the perfect notice that has, you know, a proper font, all these headings, and then someone else could come in here and tear apart the notice and say, No, I would add a heading there. I would add a heading there. So there's a range of reasonableness when it comes to notice, and I believe that this notice is fine. I don't think the notice was that suggested by the Federal Judicial Center. It's a difference in day and night. Big headlines so that someone who is not sophisticated would say, Well, I better look into that. The ordinary person looking at the government's notice, in my opinion, would just pay absolutely no attention to it at all, all the time. Well, that's a legal notice. It doesn't pertain to me. Could the notice have been clearer, number one? Any notice could have been clearer. And probably the notice here could have been clearer. But, again, that's not the standard. It's not whether or not the notice could have been better. Was it clear enough, and why was it clear enough? It was clear enough. And I think the facts of the case bear out that it was clear enough because about 90% of class year 2004 went and they filed the EITC claims. So, clearly, it served its purpose to let people know that there was a benefit out there for them. And then they sought that benefit. On review, what's the question before us today? The question before you today is whether or not the district court abused its discretion in granting a settlement that was fair. Sorry, there's the three issues before the court. The first being the fairness and reasonableness of the settlement. The second being the transfees. And there's no dispute that those are abuse of discretion. And even with the notice, there is an issue of discretion that goes along with the notice for the judge's factual findings. And this court, in regard to Gibson, found that Rule 23 doesn't require any actual form of notice, any way to get the notice out, and that's left to the district court's discretion. So, under the circuit's law, there is discretion. And I believe that Judge Tegenko-Gatewood understood that, and she took her role very seriously. It's clear for me, the opinion. It's a very thorough opinion. She was concerned about the class members. She was concerned about the attorneys' views, making sure that everyone had notice. And so I believe that that's the issue, is whether or not there was an abuse of discretion act, whether the notice passed constitutional muster, which is seen as a review. But as this court recently noted in the Rasmananda case, that standard for whether a notice passes constitutional muster is low. And here, this clearly did. Would you make a comment on the request for attorney fees by Simcoe's attorney?  And Mr. Fisher does not show that the district court abused its discretion in granting the attorneys' fees. They claim that without them, there wouldn't be a settlement. But there's nowhere in the extradited records to support that fact. Their objectors are objectors. They aren't parties to this case. And under the law, they have to prove to district court's satisfaction that they made a beneficial class. And so they presented their pitch to Judge Jody Cogatewood. They listed all the different ways that they thought they benefited the class. And she identified each of those ways in her order. And she carefully considered each of those ways. And she rejected all but one. And her rejection of all but one wasn't an abuse of discretion. There was no clearly erroneous finding of fact, no clearly erroneous finding of law. What she did was she faithfully took her job as a fiduciary for the class in awarding attorneys' fees. Thank you. I just want to briefly address the issue again of the reasonableness of the attorneys' fees. And... Is that taken care of in your brief? It is. Thank you very much. Thank you very much. No, he did not. I'll rise. This court stands in recess for 10 minutes.
judges: Farris, Nelson D. W., Bea